Good morning. May it please the court. My name is Bill Kirshner. I represent Dennis Johnson, who's the defendant and the appellant in this case. I'm going to attempt to preserve three minutes of my time if I can for rebuttal. This morning I'd like to address the first issue in the briefs, and that is the issue that has to do with the question that was sent out by the jury in this case. If there's any time left, I'd also like to address the second issue. It concerns a hearsay question. Can I ask you some questions about that very issue? Yes. Were written instructions given to the jury and that allowed them to take that into the jury room for deliberations? That allowed them to take what? In the jury room, during deliberations, did the jury have a copy of the judge's instructions? Yes. All right. And how many days did deliberations go? Less than one. About five hours. All right. So they were instructed, the note came out, the note went back in with the answer, and that same day they reached a verdict? Correct. All right. Thank you. As this court knows, this is a case of an alleged sexual assault and kidnapping. The defendant in this case at the time was a Border Patrol officer. The complainant in the case, Ms. Amaya, was a person who had just crossed the border illegally and was in Mr. Johnson's custody at the time. The only contested issue in this case was whether she had given consent for this act to take place. Mr. Johnson testified that, in fact, she had. Not only had she given consent, but that it was her idea. She had talked him into it. Ms. Amaya claimed that she had never given consent. All of the facts were presented to the jury. The jury retired. And as I say, about two hours after the jury retired, they sent out the question. And the question is, is someone in custody of a law enforcement officer able to give consent under the law? Now, the defense requested that that be answered in the affirmative. Yes, a person can give consent. There's no statute that prevents that. The defense requested or the state requested that the jury simply be referred back to the instructions that had already been given, and the court agreed with the state. I think the overriding point in this law is the United States Supreme Court case of Bolenbach. The words from that case have echoed through this court's jurisprudence and through those of the other circuits for many years that when a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy. Let me ask a question, though. Recently, the United States Supreme Court, in weeks for Angeloni, distinguished Bolenbach. Under current case law, this raises a question about the Bolenbach case. What is your response to that? I'm not claiming that the Bolenbach case governs here. I'm talking about the principle that is cited in the Bolenbach case. I do think the Bolenbach case is distinguishable because the jury instruction in that case was erroneous. So that certainly is a distinction. But the principle is clear, that a person who is accused of a crime is entitled to a jury that understands the law, that is not functioning on a misapprehension of the law. Now, as I say, I think the jury question here showed that they were certainly confused on the issue of whether a person may give consent. And I think it's ironic that that's the one issue that I believe both parties agree on at this stage in the proceedings. Now, admittedly, the State's position is only tacitly conceded in their brief. They have not directly conceded that. But I think that both parties appear to agree that there is no law that categorically prevents a person from giving consent when they are in the custody of a law enforcement officer. The State says in its brief, well, perhaps an equivocal instruction to that effect would have been appropriate. Certainly if an equivocal instruction would have been appropriate, then that's a concession that there is no law that prevents that from happening. The problem I have, I have all the instructions before me. And as I also asked you the question, were they taken to the jury room? And the judge referred them back to the jury instructions. And without going through them, you know, it seems to me if the jury has them and they read the instructions, Excerpts of Record 236, 37, 38, it tells what the kidnapping requires, proof of the following three things. Then the next one talks about what the crime of sexual assault involves without consent includes the following situations. And they asked, you know, whether the officer could, whether she could ever consent if the offer was there. He said, go back and read these jury instructions. If you read these jury instructions, it seems to me that the question of consent is really dealt with in the instructions as originally given. What is your response to that? I think the instructions that you've cited really don't answer that question. And I think the only one that may be seen to answer that question is number 238. In number 238, the court gives two types of non-consent. Now, the jury's question is whether a person in custody may ever legally give consent. This instruction certainly never talks about it in those terms. However, it does give two examples of non-consent. One is the immediate or threatened use of force. And the second one is when the victim expresses non-consent verbally. That's on ER 238. Yes, ma'am. Okay. But the important point is that it is prefaced by the word includes. And the word includes has been specifically held by the Arizona Court of Appeals, and I'm referring now to the Witwer case that is cited in the briefs, to be a term of enlargement which conveys the idea that conduct which does not fall within the listed behavior may also violate the statute. Now, what's happened here is that this first item in number the state's 238 does incorporate some language from a requested defense instruction about the immediate use of force. But the requested defense instruction gave only one way that a person could give non-consent. It told the jury that in order to find non-consent, you must find only this one way. The judge then incorporated it into this consent that is prefaced by the word includes. What that does is it makes it a non-exclusive list. It makes it a list where the jury looks back and says, well, it includes this and it includes that, but you're not telling me whether it also includes this other thing. And I think this other thing, which would be the fact that a person is in custody, also prevents consent. I think common sense tells you that there are other items that are on this list that are not included, or I'm sorry, that are included here. For instance, if a person had sexual relations with somebody who was passed out or under the influence of drugs, is that not without consent? Clearly, there are items that are on this list or that should be on this list that the judge has not included on there. And what's happened is that the jury has come up with another item that is obviously on this list, and by referring them back to a non-exclusive list, you haven't answered their question. And Mr. Johnson was entitled to an answer to the question. I think it's important to note in this case that the jury question tells us. In a way, you're right. In a way, you're wrong. I'm not sure this is fatal, but without consent includes the following situations. Well, you're not asking for another inclusion about without consent. You're asking for a different instruction. You're asking for an instruction that says with consent includes a situation where a person is in custody, depending on the circumstances. You're not asking for an additional example of without consent. I don't think that's the instruction that was requested to tell them that with consent means that a person is in custody, or always applies. No, you're asking for an instruction to say that with consent is possible when someone is in custody. That's what you want. It is possible, or another way of phrasing that would be to say that there's no law that categorically prevents a person from giving consent. That's what the defense requested in this case. And I think it really goes to the question that was asked by the jury tells us a couple of things. One thing it tells us is that one or more of these jurors must have felt that a person who is in the custody of a law enforcement officer simply can't give legal consent. That no matter how free, no matter how voluntary their consent is, that it is inoperative under the law. I tried to find but could not in this record that was given to us. Did the prosecution argue that in the closing? No. The prosecution never argued that in the closing. I would concede that. The prosecution does make the argument on appeal that the defense argued to the contrary, that the defense argument somehow told the jurors that consent was possible for a person who was in custody. You won't find that in the record, or at least I haven't been able to find that in the record. I believe what the State's doing is extrapolating from the defense argument to try to show that. But the defense never said to the jurors a person who's in custody of a police officer can give consent. That was never done. And I think that that distinguishes this case from the Weeks case that you've asked us to talk about. In the Weeks case, the Supreme Court noted that the defense attorney in closing argument did specifically talk to the jury about the issue in that case. In that case, the issue, it was a death penalty case, and the jury had decided that there was at least one aggravating factor. They sent out a question and asked, if we found one aggravating factor, do we have to impose the death penalty, or may we impose life? And the court, as here, referred them back to the instructions. But in that case, the defense counsel had specifically argued to the jurors, if you find two aggravating factors, you can still give my client life. That didn't happen here. There's also another distinction that I think needs to be shown from the Weeks case, and that is that the instruction that the court referred the jurors back to. First of all, in Weeks, they referred them back to a very precise paragraph. Here, you have to page through this trying to figure out which of these instructions may or may not answer the question. Secondly, in that case, they referred the jurors back to a constitutionally sufficient instruction, an instruction that answered their question. That's the big distinction between this and the Weeks case. If you refer them back to an instruction that answers their question, that is sufficient. Now, you just said two different things, a constitutionally sufficient instruction. Yes. And an instruction that answers their question. Are you arguing that these instructions are constitutionally insufficient? No. What I'm saying is, in that case, the instruction answered their question. And the Supreme Court specifically held that on the basis of the fact that it had been challenged before and found by that court to be constitutionally sufficient, thereby implying that that question was sufficiently answered by the instruction. Whereas here, you've got an instruction that is ambiguous. It says it includes factors A and B. It doesn't tell the jury it includes only factors A and B. And it essentially invites the jurors to speculate that perhaps it includes other things. And that appears to be a distinct possibility in this case. Now, the other case that you've asked us to talk about is the Beardsley case. The Beardsley case certainly deals with the question of harmless error. And in the State's brief, I guess at the time the State wrote its brief, the Beardsley case didn't exist, so they're certainly not at fault for failing to cite that. But basically the State's argument. A 28-J letter would have helped, however. Yes. But the State's argument is essentially that this is harmless error because the evidence was supposedly so overwhelming against Mr. Johnson. That's simply not true here. He certainly admitted the fact that an act took place. But the only evidence to the non-consent was Ms. Amaya's word. And there was contrary evidence from Mr. Johnson. Now, Ms. Amaya's word was not without some problems in this case. She had been dishonest and committed a number of acts that led a jury to probably have some doubt about her word. That started first when she crossed the border illegally. She then gave dishonest names. When she gave her name to the police officers, she gave them a false name. Later when she talked with Agent King, she told Agent King that no sex act had occurred. Now, did she say that precisely or did she simply not talk about a sex act? No, she told Agent King that a Border Patrol officer had tried to convince her to take off some of her clothing, but that she had refused to do so. So she was impeached by a number of statements that she had given before that were not true. In addition to that, when Ms. Amaya was released from Mr. Johnson's custody to the Mexican Customs Station, she appeared there, she was not upset, she seemed to be perfectly fine. Now, I'm not trying to argue the facts to you. What I'm trying to say is that a jury could reasonably conclude that there's a reasonable doubt based upon those things. It's not clear that the evidence was overwhelming here. Not only that, but we know that this jury, or perhaps it's too strong to say we know, but we have a very good indication that at least one or more of these jurors had a reasonable doubt about her testimony. And that is because they wouldn't have asked this question if they had believed her testimony. If they said, I believe everything that Ms. Amaya said and I disbelieve everything that Mr. Johnson said, there's no way you could get this question, particularly after a couple of hours of deliberation. This is not just an idle speculation by a jury who perhaps always wanted to know this question or something. This is a question by jurors that indicates that at least one or more of them is troubled by her testimony and is teetering on the balance. And they've come up with a novel theory here as to how a person can never give consent when they are in the custody of a law enforcement officer. Now, the Beardsley case specifically talks about harmless error. And the error here is very distinguishable from Beardsley. In Beardsley, if you look at the jury question, it's frankly, I have to admit, it was very difficult for me to figure out exactly where the jury was going with that question. In that case, the question was something to the effect of when the instructions say first-degree murder, are they talking about just the defendant's actions or are they talking about the murder as a whole? I don't know where that instruction was going. And the California Supreme Court had trouble figuring it out. And in this court's opinion, they cite the California Supreme Court as saying, well, the failure to answer that really appeared to prejudice the prosecution more than the defense. So that's one reason that it was harmless error in that case. That doesn't exist here. The error here is clearly prejudicial to the defense and to the defense only. But the Beardsley case does give us a test, a test that should be applied, and that is that reversal is required only when the jury expressed actual confusion about the law. That's exactly what happened here. This jury's question was clearly a question only of law. In the question itself, it says, is a person in the custody of a law enforcement officer able to give consent under the law? Secondly, it clearly shows the juror's confusion. At least one or more of these jurors must have thought that perhaps a person in custody can never give legal consent, as I say, just as perhaps a minor can never give legal consent. Even though the minor freely and willingly wants to do the act, that consent is invalid under the law. That's the kind of thing that the jurors thought was going on here. So the test in the Beardsley case is met. I would, because this was so vital to the defense theory of the case, the court abused its discretion by not answering this jury question, something that completely undercut the entire jury case. The jury could have said, I believe everything that Mr. Johnson said. I believe nothing that Ms. Amaya said. And I still believe I have to vote to convict because a person's consent, if they are in custody, is legally inoperative. And if that happened in this case, Mr. Johnson was completely deprived of his right to a fair trial. I would leave this Court, on this issue at least, with the words from the Escobar-DeBrite case, in which the Court said the jury is not free to conjure up the law for itself, permitting a defendant to offer a defense is of little value if the jury is not informed that the defense, if it is believed or if it helps to create a reasonable doubt in the jury's mind, will entitle the defendant to a judgment of acquittal. That's exactly what happened here. And reversal is required on that, for that reason. Okay. Why don't we move to the other side, and then you'll have a little time for rebuttal. Thank you very much. Thank you. Good morning. May it please the Court. My name is David Flanagan, and I'm an assistant United States attorney from Tucson, Arizona. I represent the state of Arizona as a special deputy county attorney. In this case, there are certain facts that deal with non-consent that are absolutely not disputed at all. Number one, that the victim was naked, bound, and crying during the act, that she had been the prisoner of the defendant for about six hours, that he had taken her out to the scene of the rape or of the acts in this case, a remote desert location in the back of his van or in the back of his sedan, a caged area, that he had a gun, that he was in uniform, that he searched her clothing before the act, and that she was naked upon her knees before him. After that, he had deposited her in Naco, which was a small border town outside of his jurisdiction. At the time of trial, nevertheless, he claimed that she consented to these acts, and the jury was fully instructed as to non-consent. They were instructed that the state had to prove non-consent beyond a reasonable doubt and that the state had to prove that in one of two ways, either that she verbally expressed non-consent, which the evidence was that she did, the defendant just denied that, or that the defendant had implied or imposed certain force upon her or a threat of immediate force upon her which would vitiate the non-consent. These instructions came from the Arizona revised jury instructions. The instructions given to the jury were a distillation of the instructions provided by the defense and by the state. They were not objected to those particular instructions dealing with consent by the defendant. What happened was that after about two hours of deliberation, the jury came with the question, is someone in the custody of law enforcement officer able to give consent under the law, which counsel has characterized as a purely legal question, and I would take exception to that. I would submit that simply because the words under the law appear at the end of the question, do not convert that into a legal question. Everything that the jury decides is basically under the law, and they decide the facts. And in this case, it's a mixed question of law and fact. The very word itself, is someone in custody of a law enforcement officer able, the very word able implies a factual issue. Is a person physically able to give consent? Counsel wanted and believes that the error in this case is that the response to that question should have been a categorical yes. Yes, a person is able to give consent under the law. I would submit that that is not true. That that answer, if it were given, yes, that would have been prejudicial to the state because it's not correct. The answer to that is it depends. Quite clearly, if someone is in the custody of a law enforcement officer and that officer puts a gun to her head and asks her if she consents to having sexual relations with him and she consents, that consent is not very meaningful. So it's not a legal question fully. It becomes a factual question. To what extent is the issue of custody, the fact of custody, so bringing of duress upon the situation that any consent that there would have been becomes absolutely meaningless? Well, what is the purpose of the jury question? Doesn't it show some jury confusion? Under the Powell case, it said it shows the jury is confused. There must be an answer given. What would be your response to that? Well, number one, I think counsel speculates as to what the jury is thinking here, and I can speculate, too, as to they may be wondering exactly what effect does the custody have upon her ability to consent. The duress of it, what does it have? That duress, does it vitiate the consent? I mean, I could speculate to that, but the judge referred the jury to the instructions that were previously given, and those instructions were accurate. Those instructions did answer the question, and the judge was quite correct that if he would start answering the question in another way, they would start getting more questions because there's a certain line at which you go beyond, and the consent is totally invalid because of the circumstances. Those instructions were agreed upon by defense counsel. Yes, ma'am. Then what do you do with the Beardsley case? All right. The Beardsley case dealing with if the jury expresses confusion as to the law, then you need to answer that or somehow deal with that confusion. My answer to that, number one, is that this question, as I stated earlier, simply because it uses or finishes with the words under the law is not indicative that it's truly a legal question. Counsel says that this is similar to a situation where the jury would submit a question to the effect that, are we free to disregard all the instructions of the court and convict the defendant, even though we have grave doubts as to his guilt? It's not that kind of situation. It's a situation where they're looking at some sort of factual issue. But even at that, I would submit that by referring the jury to the instructions that were previously given, that does, in effect, clear up any confusion that there might have been, that those instructions fully and adequately answered the question of the jury. Do we have in the record exactly what the judge said to the jury in response to the question, and could you put our nose in that precise language? Yes, sir. The judge said ---- And what page are you on so we can read along with you? Oh, I'm sorry. That's all right. What I'm looking at is February 12th, 2002, transcript of record on jury questions. Do we have it in the excerpts of record? It may be in the excerpt of record. Page 93 and 94. Page what? Page 93 and 94, the excerpt of record. Yes, that's where I was reading. And I'm reading in the middle of the page here on 94, the judge saying, please consider the instructions you've gotten so far. And then he goes down at line 19, please consider all the evidence and the instructions. Page 93 and 94 is the colloquy with the lawyers about what he's going to say. What I want is him saying something to the jury. I believe it's at 118. Page 118. The way I read this is that the judge just wrote a handwritten answer and sent it back in. And that's at page 118. That is correct. I see. I see. So there was no instruction or answer to the question in open court. There was rather this handwritten answer. Please consider all the evidence and the instructions you have been given. And that's the totality of the answer. That is correct. Now, Beardsley is, for your purpose, troublingly close to this case. As I read the reasoning of our panel in Beardsley, the court, our panel says, the trial court's action was clearly in error. The judge responded to a specific jury request with a command to do the best that you can, coupled with the implication that no further clarification would be forthcoming. Given the categorical nature of the admonition, there is and can be no explanation of the instructions. We disagree with the district court conclusion that the jury was not precluded from asking further questions if it desired. Well, the words this judge has used are somewhat different from the words used by the judge in Beardsley. But I have to say, this doesn't exactly invite, you know, if you're still confused, come on back. Yes, and another thing that the court points out in Beardsley is that they continued to deliberate for two hours after having received the answer to that question. And exactly about that amount of time was in this court that the jury continued to deliberate until the time of the verdict. Yeah, that may be neither here nor there, to deliberate two more hours in a capital case. Well, compared to three more hours, if that's the right number here, in a non-capital case, I'm not sure those are commensurate. But I think what they were looking at was that the jury did have the time there to ask some more questions. If it hadn't cleared up their doubts, they did have the time. They just didn't get that answer and then come back with a guilty verdict immediately, as though they believed, well, under the circumstances of this case, it's just impossible for her to have consented anyway. What do you say to counsel's point that if the victim in this case, if the jury believed the victim's testimony that she did not give consent, it would have been a very short trial, even under the instructions that were given. So counsel's point is that the only reason anybody would have asked that question is that maybe somebody on that jury did not believe the victim. And therefore was of the view that that particular juror was prepared to believe that under the law, no one in police custody can give consent at all, and therefore the defendant was guilty. Now, then the judge says, go back and read the instructions. Now, do the instructions don't really answer that question, do they? I would submit that the instructions do answer the question, because not only talking about her failing to give verbal non-consent, they talk about him applying force upon her or the threat of force, which she testified that he had threatened to leave her out in the desert to die if she did not comply. But counsel's point is maybe somebody didn't believe that on account of the other inconsistencies that counsel claims were laid before the jury in her testimony. So if that were true, then maybe someone on the jury was thinking, I don't have to reach the question of whether I believe the victim, I'm just going to say no one in police custody can give consent. Well, that's something that is speculative, I would submit. Just because a jury comes up with a question, it's very difficult to try to speculate why they come up with a question. They ask lots of questions all the time, and it would be just as reasonable to consider that they were asking what effect would the custody itself, the duress of the custody, have upon any consent that she appeared to give. Quite frankly, she did not, according to the record, fight. She did not put up any resistance. She ultimately did what he told her to do. So somebody may think that there was consent there, and that consent is vitiated by the circumstances of this case, and maybe that's what they were looking at. They were looking at, well, you know, to what extent are the whatever apparent consent that she appears to have given destroyed by the circumstances of duress? All right. Thank you. Counsel says that it was just a question of his word against her word, and I would submit that that simply is not true. I pointed out all of the circumstantial evidence of non-consent when I started this out, but there's also the physical evidence of non-consent, the physical evidence from him that was found upon her knees. It shows that she was upon her knees naked before him, and that was transferred to the inside of her pants. There's a lot of evidence here that it's just not a question of his word against hers, and truly a harmless error analysis, I think, is applicable under the cases that we've discussed and in the circumstances any error that there might have been is harmless. Did you want me to go into any of the other issues or just stay upon this one issue? It's up to you. It's up to me? Okay. I will jump to the fourth issue. I just wanted to talk about this multiplicitous charge where counsel is saying that, really, it's impossible to find him guilty of kidnapping under the circumstances because she was in his custody and the restraint was valid in any event. And I would submit that this is another situation, like the duress situation, where you have a continuum of restraint that is put upon the victim, and you get to a certain point where he has her validly in his custody, but he goes beyond a certain line, and that valid custody becomes invalid, and that legal custody loses its legality. Where that line exactly is in this case I cannot say, but I can say that he's way on the other side of that line, that he has taken her way outside of his jurisdiction. He's taken her beyond north, beyond where he picked her up several miles. For several hours he had her there, and the restraint that he had her under became illegal at that point, and therefore he can be found guilty of kidnapping just the same as anyone who would not have legal custody of her to begin with. And I would submit that there's a parallel between that issue and also the duress issue, where you have a continuum of duress that at a certain point the consent becomes vitiated when the duress becomes heavy enough. Likewise, the restraint upon her becomes illegal at a certain point, and he can be convicted of kidnapping and was properly convicted under the law and the facts in this case. Okay. Thank you. Thank you very much for your argument, counsel. Thank you. And you've saved a couple of minutes. Thank you. Thank you. As far as the fourth issue goes, I believe that issue is addressed satisfactorily in the briefs. My position is on that issue that if the Court were to take the State's requested interpretation of the statute, it would simply nullify the wording in the statute requiring that the custody not be legal custody, and therefore the charge was wrong on that. Unless the Court wants any further argument on that, I'd like to go back to the first issue. And I think there's a number of points the State has made. Most of what it said is certainly factually accurate, although I think there's one perhaps bit of exaggeration, and that is to say that Ms. Amaya was crying during this incident. What Mr. Johnson admitted was that he heard a sound that he thought was a cry. He said, what's wrong, and she didn't say anything further. So I don't think that's necessarily admitted. It was sort of contested at trial, and it's important because all of these other factors are factors that really would potentially occur in a case where consent is given anyway. Admittedly, I think handcuffs is beyond what most people would think of, but his rationale of being a law enforcement officer was at least a potential explanation for that. The State has said that by referring her back to the instruction that says that there's only two ways of giving consent, the State has completely failed in this argument and in its briefs to ever mention the Witwer case and tell us how the Witwer case doesn't apply. I see that my time has run out, and I will leave it there. Very helpful argument on both sides. Thank you. Thank you very much. The case of Arizona v. Johnson is now submitted, and we will take a ten-minute recess.
judges: Dw Nelson, W. Fletcher, Alsup